FILED
3/29/19 3:32 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

## IN THE UNITED STATES BANKRUTPCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Case No. 18-20778-GLT |
| | : | Chapter 13 |
| **ELLENI BERGER** and | : | |
| **RANDY BERGER**, | : | |
| | : | |
| *Debtors.* | : | |
| | : | |
| **ELLENI BERGER** and | : | |
| **RANDY BERGER**, | : | Adv. No. 18-02130-GLT |
| | : | |
| *Plaintiffs*, | : | Related to Dkt. No. 22 |
| | : | |
| v. | : | |
| | : | |
| **COMMONWEALTH OF PENNSYLVANIA**,: | | |
| **DEPARTMENT OF REVENUE**, *et al.*, | : | |
| | : | |
| *Defendants.* | : | |
| | : | |
| In re: | : | Case No. 17-23757-GLT |
| | : | Chapter 13 |
| **CHARLES M. YEOMANS** and | : | |
| **SHARON A. YEOMANS**, | : | |
| | : | |
| *Debtors.* | : | |
| | : | |
| **CHARLES M. YEOMANS** and | : | Adv. No. 18-02163-GLT |
| **SHARON M. YEOMANS**, | : | |
| | : | |
| *Plaintiffs*, | : | Related to Dkt. No. 6 |
| | : | |
| v. | : | |
| | : | |
| **COMMONWEALTH OF PENNSYLVANIA**,: | | |
| **DEPARTMENT OF REVENUE**, *et al.*, | : | |
| | : | |
| *Defendants.* | : | |
| | : | |

*Donald R. Calaiaro, Esq.*, Pittsburgh, Pennsylvania for Plaintiffs, Elleni and Randy Berger

*Frances E. Corbett, Esq.*, Pittsburgh, Pennsylvania, for Plaintiffs Charles and Sharon Yeomans

*Anthony T. Kovalchick, Esq.*, Office of the Attorney General, Harrisburg, Pennsylvania, for Defendant, Commonwealth of Pennsylvania, Department of Revenue

## MEMORANDUM OPINION

In mythological lore, the Greek hero Achilles thought himself to be invincible, impervious to the swords and arrows of his enemies.  So too, is the mindset of the Pennsylvania Department of Revenue ("Revenue") in the cases presently before the Court.  Revenue requests dismissal of separate adversary proceedings brought by chapter 13 debtors seeking to reduce or eliminate Revenue's secured claims.  Revenue believes itself to be cloaked with sovereign immunity of such magnitude that its tax liens are invulnerable to modification by the bankruptcy court.  But just as Achilles fatefully discovered his mortality, the Court finds that Revenue's liens are similarly susceptible to a well-heeled attack in these proceedings.  After careful consideration, and for the reasons set forth fully below, the Court will deny Revenue's motions to dismiss.

## I.    BACKGROUND

Two sets of chapter 13 debtors commenced adversary proceedings to determine the nature and extent of various liens asserted against their real property.  Revenue is a defendant in both cases because it holds tax liens on the affected properties.[1]   Through separate motions, Revenue seeks dismissal of both adversary cases and each debtor has filed a response in opposition.[2]  As both cases present the question of whether sovereign immunity prohibits the debtors from removing unsecured or undersecured tax liens from their property, the Court will decide them simultaneously.

---

[1]     There are additional defendants in both cases.  The Bergers name PNC Bank as a defendant, while the Internal Revenue Service is a defendant in both the Bergers' and the Yeomans' cases.  Though these defendants filed answers in both cases, only Revenue has moved to dismiss the debtors' complaints.  See Adv. No. 18-02130 at Dkt. Nos. 21, 33; Adv. No. 18-02163 at Dkt. No. 9.

[2]     Case No. 18-02130 at Dkt. Nos. 22, 31; Case No. 18-02163 at Dkt. Nos. 6, 12.

The debtors in the first case are Randy and Elleni Berger, owners of two parcels of real property in the Pittsburgh area. Their residence, located at 150 Millview Drive, has an alleged value of $390,000 and is encumbered by a first-priority mortgage securing a loan payoff of $488,805.[3] A second property, located at 104–104½ Brilliant Avenue, is valued at $175,000[4] but remains subject to a mortgage loan with a payoff exceeding $197,000.[5]

Revenue filed a proof of claim against the Bergers seeking $11,050.82 for unpaid personal income taxes, of which $10,824.43 is allegedly secured.[6] Although they acknowledge Revenue's claim in their chapter 13 plan, the Bergers value the secured portion of the claim at $0, subject to a final judicial determination in a separate adversary proceeding.[7] The Bergers subsequently commenced this adversary proceeding to determine the extent of Revenue's secured status on the real property.[8] Claiming that any value in the properties is entirely subsumed by the obligations owed on the first-priority mortgages, the Bergers seek to "avoid" Revenue's liens at the completion of their chapter 13 plan through 11 U.S.C. § 1322(b)(2).[9]

The second case involves debtors Charles and Sharon Yeomans. They filed a chapter 13 plan recognizing Revenue as the holder of secured claim in the amount of $0,[10] notwithstanding Revenue's proof of claim asserting a secured claim in excess of $108,000.[11] The

---

[3]        Adv. No. 18-02130 at Dkt. No. 20, ¶¶ 11, 12. The Millview Drive property is also allegedly subject to a second mortgage held by PNC Bank with a payoff amount of $119,865.13. Id. at ¶ 14.

[4]        Id. at ¶ 27.

[5]        Id. at ¶ 28.

[6]        Case No. 18-20778, Claim No. 4-1.

[7]        Case No. 18-20778 at Dkt. No. 22.

[8]        See Adv. No. 18-02130 at Dkt. Nos. 1, 20. The original Complaint only addressed the Millview property. An Amended Complaint was subsequently filed to place both properties at issue.

[9]        Id. at ¶¶ 23, 40.

[10]       Id. at Dkt. No. 45.

[11]       Case No. 17-23757, Claim No. 2-1.

Yeomans now seek a determination as to the extent to which Revenue's tax lien is secured against their residence at 18 Wynnecliffe Drive in Carnegie, Pennsylvania.[12]   The Yeomans believe the property is worth $112,000 and is encumbered by a mortgage lien in the amount of $40,715.02.[13] With only $71,285 in residual value available for the remaining lienholders,[14] the Yeomans seek a "cramdown" of Revenue's tax lien pursuant to 11 U.S.C. §§ 506(a) and 1322(b)(2).[15]

Revenue filed motions to dismiss both adversary cases, contending that any attempt to remove or reduce the secured portions of Revenue's tax liens would be a violation of its Eleventh Amendment sovereign immunity.  The Court must determine whether the debtors' complaints are barred by Revenue's assertions.

## II.    <u>JURISDICTION</u>

This Court has authority to exercise jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 157(a), 1334, and the Order of Reference entered by the United States District Court for the Western District of Pennsylvania on October 16, 1984.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(K).

## III.    <u>POSITIONS OF THE PARTIES</u>

### A.    **Revenue**

Revenue seeks dismissal of the debtors' complaints under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), asserting that it enjoys sovereign immunity which bars the relief sought by the debtors.[16]  Revenue argues that it has not waived this immunity, and therefore the

---

[12]     Adv. Case No. 18-02163 at Dkt. No. 1, ¶ 7.

[13]     <u>Id.</u> at ¶¶ 8, 9.

[14]     <u>Id.</u> at ¶ 10.

[15]     <u>Id.</u> at ¶ 13.

[16]     The motions seemingly represent a recent change in Revenue's litigation strategy.  <u>See, e.g.</u>, <u>Muha v. Comm. Pa. Dep't Revenue</u>, Case No. 03-02280 at Dkt. No. 4 (stripping portion of lien held by Pennsylvania Department of Revenue from debtor's residence); <u>Turmo v. Beneficial</u>, Case No. 06-02006 at Dkt. No. 7

Court lacks subject matter jurisdiction to hear these proceedings pursuant to Rule 12(b)(1). For this proposition, Revenue claims that its filing of a proof of claim did not arise out of the same "transaction or occurrence" as the debtors' adversary complaints, so there could be no attendant waiver of immunity.[17]

Revenue also argues that its rights as a lienholder cannot be modified under 11 U.S.C. § 1322(b)(2) because § 1322 is not among the Code sections for which Congress has statutorily abrogated sovereign immunity in 11 U.S.C. § 106(a)(1). The debtors' attempts to strip those liens pursuant to that provision therefore fail to state a claim for which relief can be granted. For this second proposition, Revenue relies on *In re Ryan*, a Seventh Circuit case which it argues implicitly recognizes that chapter 13 lien-stripping can be foreclosed by sovereign immunity.[18]

Finally, Revenue insists that the debtors are seeking "affirmative relief" against the state by stripping its liens, which takes the matter outside of the realm of purely *in rem* proceedings for which sovereign immunity would not attach.[19] This third proposition relies upon Revenue's distinction between lien-stripping and other forms of ancillary *in rem* relief because of its adversarial nature, which Revenue argues distinguishes it from the *in rem* actions at issue in

---

(stripping lien held by Revenue from debtor's vehicle); Lancos v. Comm. Pa. Dep't Revenue, Case No. 06-02428 at Dkt. No. 7 (stripping lien held by Revenue from debtor's residence); Roche v. Comm. Pa. Dep't Revenue, Case No. 09-02585 at Dkt. No. 4 (Revenue concedes that its claims are unsecured because of junior priority); Wilson v. Comm. Pa. Dep't Revenue, Case No. 11-02125 at Dkt. No. 11 (stripping lien held by Revenue from debtor's vehicle); Bagaley v. Comm. Pa. Dep't Revenue, Case No. 13-02293 at Dkt. No. 13 (Revenue concedes that its claims are unsecured because of junior priority); Young v. Comm. Pa. Dep't Revenue, Case No. 13-02294 at Dkt. No. 7 (Revenue concedes that its claims would be unsecured if there is insufficient equity in collateral for them to attach to); Cappe v. IRS, Case No. 14-02197 at Dkt. No. 7 (same); Patterson v. Pa. Dep't Revenue, Case No. 15-02199 at Dkt. No. 6 n.4 (Revenue noting that sovereign immunity does not apply to lien stripping actions). In each of the foregoing chapter 13 cases filed over the past decade, the debtors' efforts to modify Revenue's liens were met with little fanfare and include no mention of sovereign immunity, save for one instance where Revenue states that it would not apply in a lien-stripping action.

[17]    See 11 U.S.C. § 106(b).

[18]    Ryan v. United States (In re Ryan), 725 F.3d 623 (7th Cir. 2013).

[19]    Adv. Case No. 18-02130 at Dkt. No. 32; Adv. Case No. 18-02163 at Dkt. No. 14.

*Tennessee Student Assistance Corp. v. Hood*[20] and *Central Valley Community College v. Katz.*[21] Revenue ultimately concludes that the Court's "jurisdiction . . . is limited to determining whether the statutory liens are 'secured' within the meaning of 11 U.S.C. § 506(a)(1)," and the Court lacks any power to grant relief beyond that.[22]

### B.    Debtors

Both sets of debtors filed responses to Revenue's motions.  The Bergers argue that the Supreme Court's decision in *Katz* established the proposition that *in rem* proceedings in bankruptcy court preclude a sovereign immunity defense by the States, and a lien-stripping action under §§ 506(a) and 1322(b)(2) is nothing more than an *in rem* proceeding.[23]  The Bergers additionally argue that to the extent sovereign immunity existed, Revenue waived this defense when it filed a proof of claim.[24]  Finally, the Bergers make an unadorned appeal to extend the holding of *Rankin v. De Sarno*[25] to sovereign States.[26]

The Yeomans similarly argue that Revenue waived its sovereign immunity by filing a proof of claim through 11 U.S.C. § 106(b).[27]  They also advance the argument that the lien-stripping mechanism accomplished through §§ 506 and 1322 falls within the provisions abrogating

---

[20]      541 U.S. 440 (2005).

[21]      546 U.S. 356 (2006).

[22]      Adv. Case No. 18-02130 at Dkt. No. 22; Adv. Case No. 18-02163 at Dkt. No. 6.

[23]      Adv. Case No. 18-02130 at Dkt. No. 29, ¶¶ 6–8.

[24]      Id. at ¶ 9.

[25]      89 F.3d 1123 (3d Cir. 1986) (holding that sovereign immunity did not apply to a lien held by a municipal taxing authority).

[26]      Adv. Case No. 18-02130 at Dkt. No. 29, p. 4.  As Revenue has correctly recognized in its Reply, municipal authorities and State authorities are not treated alike for purposes of sovereign immunity.  Compare Monell v. Dept. Soc. Servs., 436 U.S. 658 (1970) (municipalities are "persons" with regard to § 1983) with Will v. Mich. Dept. State Police, 491 U.S. 58 (1989) (states are not "persons" with regard to § 1983).  The Court will not address this argument further, as it is both the least defensible and the least necessary to a resolution of the present matter.

[27]      Adv. Case No. 18-02163 at Dkt. No. 12, ¶ 1.

sovereign immunity in § 106(a)(1).  According to their reasoning, the fact that § 1322 is not included among the enumerated provisions of § 106(a)(1) is immaterial, because §§ 506 and 1327 both are present.  Allowing for the determination of secured status to abrogate sovereign immunity and for plan confirmation to abrogate sovereign immunity without allowing for the provisions of the plan itself to abrogate sovereign immunity would make the process of plan confirmation "pointless," and "undermine the jurisdiction of [the] Court to determine the rights and liabilities of the debtors."[28]

## IV.    DISCUSSION

### A.    Standard

When reviewing a motion to dismiss a complaint under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."[29]  "The Third Circuit has instructed that . . . the factual and legal elements of a claim should be separated, and while the well-pleaded factual allegations in the complaint must be accepted as true, any legal conclusions may be disregarded."[30]

Similarly, when reviewing a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), a court must differentiate between a "facial" and "factual" attack on its jurisdiction.[31]  "A facial attack . . . is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court."[32]  The standard for reviewing a Rule 12(b)(1)

---

[28]    Id. at ¶ 3.

[29]    Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

[30]    Veltre v. Fifth Avenue Bank (In re Veltre), 562 B.R. 890 (Bankr. W.D. Pa. 2009) (citing Fowler, 578 F.3d at 210–11).

[31]    Constitutional Party v. Aichele, 757 F.3d 347, 357–58 (3d Cir. 2014).

[32]    Id. at 358.

motion that constitutes a "facial attack" on a court's jurisdiction is the same as the standard for reviewing a Rule 12(b)(6) motion for failure to state a claim.[33]  In the present matters, the facts are not in dispute; rather, at issue is only whether or not granting the relief sought by the debtors' complaints would be legally possible in light of Revenue's claim of sovereign immunity.

### B.    The Concept of Lien Stripping

Put simply, lien stripping is the act of removing an otherwise enforceable or valid lien from a debtor's property when the property is worth less than the total amount owed to secured creditors.  The ability to reduce or eliminate liens on overencumbered property represents one of the most powerful tools available to debtors seeking to restructure their financial affairs.  To the extent that a claim is deemed secured, a debtor must remain current on the obligation or risk allowing the creditor to take possession of their property.  When there are multiple creditors secured by the same property, this can result in a monumental strain on the debtor's estate; a debtor may be faced with the prospect of servicing two or three mortgages simultaneously or risk losing their home.  By having liens with junior priority deemed wholly or partially unsecured by the lien stripping process, debtors can reduce the amount of debt that must be serviced as part of a confirmable plan, thereby relieving financial distress and increasing the likelihood they can retain the property during the course of the bankruptcy and beyond.[34]

As Judge Agresti explained in *In re Johnson*, lien-stripping encompasses both "strip-downs," where a lien is "reduced to the equity value held by the debtor," and "strip-offs," where "a wholly-unsecured creditor's lien is removed from collateral in which there is no equity

---

[33]    Id.; see also Merritt v. MidAtlantic Farm Credit, ACA (In re Merritt), 529 B.R. 845, 857–58 (Bankr. W.D. Pa. 2015).

[34]    See Rosemary Williams, Annotation, Special Commentary: Bifurcation and Avoidance, or "Stripping," of Liens, Security Interests, and Encumbrances Held by Undersecured Creditors by Rehabilitating and Liquidating Debtors in Bankruptcy, 158 A.L.R. Fed. 1, at § 3b (1999).

value."[35]  In this parlance, the Bergers are seeking a strip-off, whereas the Yeomans are pursuing

a strip-down.  An understanding of how this is accomplished through the Code—and why it must

be accomplished in this way—is necessary for properly resolving the issues in the present cases.

Any discussion of lien-stripping procedure must begin with the Supreme Court's

decision in *Dewsnup v. Timm*, involving a chapter 7 debtor's attempt to use 11 U.S.C. §§ 506(a)

and 506(d) to reduce a lien that exceeded the fair market value of the underlying collateral.[36]  The

debtor argued that the lien-voiding provisions of § 506(d) rely on the definitional language of

§ 506(a) to establish the boundaries of a secured claim.[37]  To the extent a lien was not deemed

secured under § 506(a), the debtor contended it was not "an allowed secured claim" and could be

voided under § 506(d).[38]  The Supreme Court disagreed and found that the two uses of "allowed

secured claim" in §§ 506(a) and 506(d) were not identical, and that any "allowed claim" that was

"secured" by a lien, to any extent, was not voidable at all through § 506(d).[39]  *Dewsnup* thus held

that lien stripping under § 506(d) is impermissible in chapter 7 cases, a prohibition that was

recently extended to strip-offs with the decision in *Bank of America, N.A. v. Caulkett*.[40]

The extent to which a lien may be stripped can vary, depending on whether the

debtor is pursuing a liquidation or a reorganization.[41]  As noted by Judge Agresti in *Johnson*,

---

[35]    Johnson v. IRS (In re Johnson), 386 B.R. 171, 173 (Bankr. W.D. Pa. 2008).

[36]    502 U.S. 410 (1992).

[37]    "An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a
secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . .
and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of
such allowed claim."  11 U.S.C. § 506(a)(1).

[38]    "To the extent that a lien secures a claim against the debtor that is not an allows secured claim, such lien is
void."  11 U.S.C. § 506(d).

[39]    Dewsnup, 502 U.S. at 418.

[40]    135 S. Ct. 1995 (2015).

[41]    Johnson v. IRS (In re Johnson), 386 B.R. 171, 174–78 (Bankr. W.D. Pa. 2008).

"[m]any of the courts . . . have noted that a general prohibition against lien stripping in reorganization cases would be inconsistent with pre-Bankruptcy Code law, and would conflict with key provisions and principles applicable in the reorganization chapters of the Bankruptcy Code."[42]  The rationale which compelled the Supreme Court to prohibit lien stripping in chapter 7 cases simply does not apply to the very different circumstances of a reorganization case under chapter 11 or 13.  More importantly, certain Code sections are available to reorganization debtors that are not available to chapter 7 debtors; these sections provide alternatives to the § 506(d) lien-voiding theory that was rejected by *Dewsnup* and *Caulkett*.

The legal mechanism by which lien stripping is properly accomplished under reorganization plans was detailed by Judge Fischer on appeal of *In re Johnson*.[43]  The statutory mechanism is simple: "a lien is bifurcated into secured and unsecured claims under § 506(a) and then an allowed secured claim can be modified under § 1322(b)(2) in conjunction with a debtor's confirmed plan of reorganization."[44]  As Judge Fischer observes, this understanding avoids conflicting with the interpretation of § 506(d) in *Dewsnup* that made chapter 7 lien-stripping impermissible.[45]  Instead of relying on § 506(d)'s lien-voiding language, the chapter 13 debtor "modif[ies] the rights of holders of secured claims" via § 1322(b)(2), stripping the lien by addressing it in their plan of reorganization.[46]  With the proper framework thus outlined, the Court now turns to Revenue's arguments as to why its liens should not be modifiable in this manner.

---

[42]   Id. at 175.  Judge Agresti provides a detailed account of how reorganizational bankruptcy cases differ from the chapter 7 liquidation bankruptcies at issue in Dewsnup.  See Id. at 176–78.

[43]   In re IRS Dep't of Treasury of U.S. v. Johnson, 415 B.R. 159 (W.D. Pa. 2009).

[44]   Id. at 168.

[45]   Id. (citing Sapos v. Provident Inst. Savs., 967 F.2d 918, 924–25 (3d Cir. 1992)).

[46]   11 U.S.C. § 1322(b)(2); see also McDonald v. Master Fin., Inc. (In re McDonald), 205 F.3d 606, 611–12 (3d Cir. 2005).  While McDonald suggests that the Supreme Court's decision in Nobelman v. American Savings Bank, 508 U.S. 324 (1993), may produce different results in chapter 13 between strip-downs and strip-offs, that question need not presently be addressed by the Court.

10

C.   **Sovereign Immunity**

The Eleventh Amendment provides that the "[j]udicial power of the United States shall not be construed to extend to any suit . . . against one of the United States."[47]  Succinctly, this means that a State usually cannot be sued without its consent.[48]

Sovereign immunity, however, is not absolute.  A State may consent to suit by waiving its sovereign immunity,[49] or it may have its immunity abrogated by an act of Congress through a clear expression of intent and a valid constitutional mandate to do so.[50]  Abrogation requires a showing of a constitutional basis for passing the law, and the law itself must unequivocally and clearly expresses an intent to abrogate sovereign immunity with respect to its terms.[51]  Congress's exercise of its Article I powers typically has been, by itself, insufficient to establish a valid basis for abrogating sovereign immunity.[52]  A notable exception, however, is the Bankruptcy Clause.[53]  The Supreme Court has held that the States implicitly consented to a waiver of their sovereign immunity in bankruptcy proceedings when they agreed to the inclusion of the Bankruptcy Clause in Article I.[54]  This finding was premised upon the decision in *Tennessee Student Assistance Corp. v. Hood*, which held that *in rem* procedures intrinsically do not give rise to a defense of sovereign immunity because they are not suits "against" a State.[55]

---

[47]   U.S. Const. amend. XI.

[48]   See, e.g., Hans v. Louisiana, 134 U.S. 1 (1890); Alden v. Maine, 527 U.S. 706 (1999).

[49]   See College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666 (1999).

[50]   See Seminole Tribe v. Florida, 517 U.S. 44 (1996).

[51]   Id. at 55 (quoting Green v. Mansour, 474 U.S. 64, 68 (1985)).

[52]   College Sav. Bank, 527 U.S. at 683–84.

[53]   U.S. Const. art. I, § 8, cl. 4.

[54]   Cent. Va. Cmty. College v. Katz, 546 U.S. 356, 358 (2006).

[55]   541 U.S. 440, 447 (2005).

In order for Revenue's liens to be modifiable, it must have then either waived its sovereign immunity, had its sovereign immunity abrogated through an act of Congress, or not have had sovereign immunity with respect to this kind of claim in the first place.  The Court will address each of these prospects in turn.

### 1.    Waiver of Sovereign Immunity Pursuant to Section 106(b)

The Court will begin by assuming, *arguendo*, that Revenue enjoys sovereign immunity with respect to this type of action, and such immunity has not been statutorily abrogated. In that circumstance, the only question is whether Revenue waived its immunity when it filed a proof of claim in each of the debtors' bankruptcy cases.  11 U.S.C. § 106(b) provides:

> A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.[56]

As noted above, Revenue did in fact file proofs of claim in both debtors' cases.  The issue at hand is whether the proofs of claim arose out of the same "transaction or occurrence" that gave rise to the debtors' claims—that is, their adversary complaints seeking to strip Revenue's liens.[57]

In *International Finance Corp. v. Kaiser Group International, Inc.*, the United States Court of Appeals for the Third Circuit observed that "[t]he legislative history of § 106(b) and the case law interpreting that provision make clear that courts should look 'to the standards employed in identifying compulsory counterclaims under Federal Rule of Civil Procedure 13(a)

---

[56]    11 U.S.C. § 106(b).

[57]    See Int'l Fin. Corp. v. Kaiser Grp. Int'l Inc., 399 F.3d 558, 565 (3d Cir. 2005) ("Thus, by its terms, § 106(b) limits the scope of a waiver predicated on the filing of a proof of claim to those adversarial claims that are both 'property of the estate' and 'arise out of the same transaction or occurrence' as the claims set forth in the proof of claim.").

for guidance."[58]  Rule 13(a)'s "transaction or occurrence" language is identical to the language of § 106(b).[59]  The operative question is whether there exists a "logical relationship" between the two claims.[60]

In *Kaiser*, the Third Circuit found that the logical relationship test was satisfied when a creditor's claim and a debtor's adversary complaint arose out of the same underlying construction project.[61]  Despite the fact that the two claims did not arise at the same time, or as a result of the same action, the Third Circuit nonetheless found the logical relationship test satisfied because they both arose out of the same "aggregate core of facts."[62]

Revenue's position is, unsurprisingly, that the filing of its proofs of claim did not bear a logical relationship to the debtors' adversary complaints.  Though Revenue cites to *Kaiser* and recites the proper test in its brief, it nonetheless relies on *In re Weaver* for the proposition that filing a proof of claim does not satisfy the "logical relationship" test.[63]  In *Weaver*, the Bankruptcy Court for the Northern District of Ohio held that the filing of a proof of claim by a state taxing authority did not constitute a waiver of its sovereign immunity under § 106(b).  Overlooked, apparently, is the fact that the Sixth Circuit "takes a more stringent approach and, in addition to requiring a 'logical relationship' between the parties' claims . . . [also] requires [the satisfaction of

---

[58]     Id. at 567 (quoting Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.), 973 F.2d 1065, 1086 (3d Cir. 1992)).

[59]     See FED. R. CIV. P. 13(a)(1)(A).

[60]     Kaiser, 399 F.3d at 569.

[61]     Id. at 569–70.

[62]     Id.

[63]     248 B.R. 106 (Bankr. N.D. Oh. 2000).

three additional criteria]."[64]    Here in the Third Circuit, "we are instructed that the logical relationship test should be construed liberally."[65]

Conceptually, Revenue frames the present relationship (or more accurately, lack of relationship) as one between whether the debtors owe the taxes Revenue seeks to collect, and the fact that other lienholders encumber the debtors' properties. The Court, however, finds this characterization strained.

It is important to recognize the scene in which these claims are set: a chapter 13 bankruptcy. This context is critical to a proper understanding of whether a "logical relationship" exists. Here, the circumstances that gave rise to the proof of claim are naturally related to the circumstances that gave rise to the adversary complaints by the debtors' efforts to reorganize their debt through the chapter 13 plan process.

This is no mere generality. Revenue filed proofs of claim in the debtors' bankruptcy cases because it sought payment from the debtors' plans, thereby invoking the jurisdiction of this Court.[66] By doing so, Revenue subjected itself to the claims allowance process and any subsequent determination as to the nature and extent of its claims, which is all that the adversary proceedings seek to do. The complaints filed by the debtors sought to assess the secured status of those same claims and thereby dictate their treatment within the chapter 13 plans.[67] Both

---

[64]    Id. at 110. The three additional criteria are "[1.] The issues of fact and law . . . must be largely the same. [2.] a court must determine if res judicata would bar a subsequent suit on the counterclaim if the court were not to take jurisdiction. [3]. the court . . . must determine whether substantially the same evidence would support or refute both the claim and counterclaim." (internal citations omitted).

[65]    See Int'l Fin. Corp. v. Kaiser Grp. Int'l Inc., 399 F.3d 558, 569 (3d Cir. 2005).

[66]    In re Univ. Med. Ctr., 973 F.2d 1065, 1086 (3d Cir. 1992) ("[W]hen a government agency formally invokes the jurisdiction of the bankruptcy court through filing a proof of claim, the government's exposure to counterclaim liability under section 106(a) [sic] is undisputed.").

[67]    The question of whether any sovereign immunity may have been waived by Revenue's initial failure to object to the debtors' plans has not been raised by any party.

the proofs of claim and the adversary complaints are nothing more than devices by which both parties seek to declare their rights with respect to the same underlying property of the debtors' estates. Because Revenue's claims cannot be allowed or disallowed without an assessment of its secured status, the resolution of both matters is integral to assessing the creditor-debtor relationship and therefore arise out of the same aggregate core of facts.[68]

As the proofs of claim represent a demand on the debtors' estates by Revenue, and the complaints seek declarations of Revenue's rights in property that belongs to those estates, the logical relationship test is satisfied. The proofs of claim and the adversary complaints arise out of the same "transaction or occurrence," and Revenue has therefore waived its sovereign immunity with respect to the debtors' complaints.

### 2.    Abrogation of Sovereign Immunity Pursuant to Section 106(a)

Notwithstanding the Court's conclusion that sovereign immunity was waived by the filing of a proof of claim under § 106(b), the Court alternatively finds that sovereign immunity was abrogated by Congress pursuant to § 106(a). This determination turns on whether Congress abrogated sovereign immunity with respect to the lien-stripping process found in the Bankruptcy Code.

As explained above, the relevant lien-stripping apparatus presented in these cases is § 1322(b)(2), which allows debtors to modify the rights of secured creditors through the confirmation of a chapter 13 plan.[69] While this process requires using the valuation provisions of § 506(a) to determine the extent to which a lienholder has an "allowed secured claim," it does *not*

---

[68]     The filing of a proof of claim positively invites any resulting adversary proceeding, as it is "integral to the restructuring of the debtor-creditor relationship." See Stern v. Marshall, 564 U.S. 462, 497 (2011).

[69]     See McDonald v. Master Fin., Inc. (In re McDonald), 205 F.3d 606, 609–12 (3d Cir. 2000).

rely on the lien-avoiding language of § 506(d).[70]  This is necessary, as lien-stripping under § 506(d) is specifically prohibited by *Dewsnup* and *Caulkett*.[71]

Revenue views this distinction as highly significant, as § 506 is included among the enumerated Code sections for which sovereign immunity is abrogated in § 106(a), and § 1322 is not.  According to Revenue, this means that § 1322(b)(2) cannot be used to strip a lien held by an entity with sovereign immunity.  To support this theory, Revenue cites to the Seventh Circuit case of *Ryan v. United States*, which it contends recognizes the impossibility of stripping a governmental unit's lien in chapter 13 cases.[72]

Revenue's reliance on *Ryan* strains the boundaries of inference.  The debtor in *Ryan* asked the United States Court of Appeals for the Seventh Circuit to recognize a distinction between the application of § 506(d) in chapter 13 cases and chapter 7 cases in order to circumvent *Dewsnup*.[73]  The creditor in *Ryan* was the Internal Revenue Service.  The debtor argued that the court must recognize lien-stripping under § 506(d) in his chapter 13 case because the IRS had not waived its sovereign immunity, allegedly leaving him without any means of stripping its lien.[74]  In response, the Seventh Circuit merely made the uncontroversial observation that a court cannot interpret the same statute differently in different applications (in this case, different bankruptcy chapters) unless the statute itself provides for doing so, and denied the debtor his request.[75]

---

[70]     Nobelman v. Am. Sav. Bank, 508 U.S. 324, 328–29 (1993); McDonald, 205 F.3d at 610.

[71]     Dewsnup v. Timm, 502 U.S. 410 (1992); Bank of Am., N.A. v. Caulkett, 135 S. Ct. 1995 (2015).

[72]     Ryan v. United States (In re Ryan), 725 F.3d 623 (7th Cir. 2013).

[73]     Id. at 625–26.

[74]     Id.

[75]     Id. at 627 ("Section 506(d) . . . does not distinguish claims under Chapter 7 from those under Chapter 13.  The language is uniform and does not lend itself to any differential treatment, and § 103(a) renders the provision applicable to Chapter 7 and Chapter 13 without distinction.").

Revenue attempts to stretch the language in *Ryan* to show that the Seventh Circuit recognizes sovereign immunity with respect to § 1322(b)(2), because otherwise the debtor would have simply invoked that provision of the Code for the relief he sought.  Again, it must be emphasized that the Seventh Circuit *in no way* addressed § 1322 in *Ryan*; it merely stated that the debtor could not accomplish what he wanted to do through § 506(d).  Third Circuit law is clear that lien stripping in chapter 13 cases is not accomplished through § 506(d), but by a combination of § 506(a) and § 1322(b)(2).[76]

Revenue admits, as it must, that it is subject to the valuation provisions of § 506(a) owing to its inclusion among the sections listed in § 106(a).  Also listed among those enumerated provisions is § 1327, which describes the effects of plan confirmation on the rights of a debtor and his or her creditors.  Section 1327(a) specifically provides that "the provisions of a confirmed plan bind the debtor and each creditor."[77]  In other words, § 1327 is the statutory provision that makes the terms of a debtor's plan enforceable against the creditors that fall within its purview.

This is crucial, as § 1322 only concerns the contents of the plan itself.  While Revenue is correct in stating that § 1322 is not listed among the provisions of § 106(a), its inclusion would be entirely obviated by the inclusion of § 1327.  Section 1327 is an enabling clause; if sovereign immunity has been abrogated with respect to the power to bind creditors to the terms of a confirmed plan, then § 1322's provisions detailing the components of a plan are subsumed within that abrogation to give effect to § 1327's inclusion.  Otherwise, the inclusion of § 1327 within the abrogation sections of § 106(a) would be impotent, and "[i]t is [a court's] duty to give effect, if

---

[76]    See, e.g., McDonald v. Master Fin., Inc. (In re McDonald), 205 F.3d 606 (3d Cir. 2000); In re IRS Dep't of Treasury of U.S. v. Johnson, 415 B.R. 159 (W.D. Pa. 2009).

[77]    11 U.S.C. § 1327(a).

possible, to every clause and word of a statute."[78]  By analogy, it would be foolish to suggest the definitions contained within §101 of the Code are not controlling because those provisions are similarly excluded from §106(a).

Here, both plans specify the treatment accorded to Revenue's claims and final confirmation of those plans pursuant to § 1327 would give effect to their terms.  While § 1322 details what each plan may provide, it is § 1327 that makes those terms binding upon creditors. To the extent the debtors' plan would pay the full amount of Revenue's secured claim, discharge any unsecured claim, and satisfy any lien upon completion of the case, Revenue's sovereign immunity has been properly abrogated with respect to those actions through the combination of §§ 506(a) and 1327.

3.    *Existence of Sovereign Immunity*

Revenue's claim of sovereign immunity has now been twice upended.  There remains, however, the assertion that Revenue never had sovereign immunity to invoke in the first place, because of the nature of an *in rem* proceeding.  Revenue, for its part, contends that lien-stripping is properly understood as an *in personam* proceeding, because removing a lien would constitute "affirmative relief" against the lienholder.  Upon consideration, the Court finds that this is a third alternative basis to deny the relief Revenue requests.

The topic of sovereign immunity in bankruptcy was first broached in *Tennessee Student Assistance Corp. v. Hood*, when a debtor attempted to have her student loans discharged as an undue hardship pursuant to 11 U.S.C. § 523(a)(8).[79]  While § 523 is indeed listed among the enumerated provisions of § 106(a), the Supreme Court instead held that "a proceeding initiated by

---

[78]    Rojas v. Attorney General of the U.S., 728 F.3d 203, 210 (3d Cir. 2013) (quoting United States v. Menasche, 348 U.S. 528, 538–39 (1955)).

[79]    541 U.S. 440 (2004).

a debtor to determine the dischargeability of a student loan debt is not a suit against the State for the purposes of the Eleventh Amendment," and therefore the governmental creditor could not invoke sovereign immunity in the first place, making any abrogation argument irrelevant.[80]

The Supreme Court explained that bankruptcy courts have an inherent power to adjudicate the debtor's *in rem* rights in estate assets; when a discharge is entered, it merely affects the rights in the *res*, rather than the personal rights of any creditors.[81]   Though the discharge of the debt may appear to be an attack on a creditor's rights, it really is nothing more than an impartial determination of the rights to a debtor's property.[82]

This distinction between *in personam* and *in rem* jurisdiction was elaborated upon in *Central Virginia Community College v. Katz*, which involved setting aside preferential transfers made to colleges by a chapter 11 debtor.[83]   After exploring the history of the Bankruptcy Clause, the Court found that the States had consented to abrogation of their sovereign immunity at the time of the Clause's adoption.[84]   Crucially, any proceedings which were "ancillary to" a bankruptcy court's exercise of *in rem* jurisdiction, such as adversary proceedings to discharge student loan debt or set aside preferential transfers, also fell under this original consent to be sued.[85]

---

[80]   Id. at 443.

[81]   Id. at 447–48 ("At least when the bankruptcy court's jurisdiction over the res is unquestioned, our cases indicate that the exercise of its *in rem* jurisdiction to discharge a debt does not infringe state sovereignty.") (citations omitted).

[82]   Id. ("A bankruptcy court is able to provide the debtor a fresh start . . . because the court's jurisdiction is premised on the debtor and his estate, and not on the creditors.").

[83]   546 U.S. 356 (2006).

[84]   Id. at 378 ("In ratifying the Bankruptcy Clause, the States acquiesced in a subordination of whatever sovereign immunity they might otherwise have asserted in proceedings necessary to effectuate the *in rem* jurisdiction of the bankruptcy courts.").

[85]   Id. at 371 ("[B]ecause the proceeding was merely ancillary to the Bankruptcy Court's exercise of its *in rem* jurisdiction . . . it did not implicate state sovereign immunity.").

Lien stripping is nothing more than a determination of the rights in a debtor's *res*, in exactly the same way as the discharge of student loan debt in *Hood* and the avoidance of a preferential transfer in *Katz*. Indeed, the assessment and modification of liens against estate assets is the quintessential *in rem* proceeding, much more so than the actions evaluated by the Supreme Court in those two cases.[86]  Revenue's assertion that lien-stripping is an "affirmative act" is also unavailing, because it wholly ignores the language in *Katz* authorizing ancillary proceedings to *in rem* adjudications.  The act is "affirmative" in the same sense that clawing back a preferential transfer from a transferee is affirmative, and implicates the affected party's rights to the same extent.

Characterizing the removal of the lien through a chapter 13 plan as an *in personam* proceeding is simply another attempt by Revenue to dress up simple facts in deceptive garb. Beneath the costume, the truth remains: determining rights in a piece of property is properly an *in rem* proceeding.  Revenue therefore has no sovereign immunity to raise in these proceedings.

## V.   **CONCLUSION**

In light of the foregoing, each of Revenue's motions to dismiss are denied.  This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052.  The Court will issue separate orders consistent with this opinion.

Dated: March 29, 2019

GREGORY L. TADDONIO  cgt
UNITED STATES BANKRUPTCY JUDGE

---

[86]   See Suits in rem or quasi in rem, 62B Am. Jur. 2d Process § 140 (2019) ("A proceeding that merely determines the ownership of property is traditionally called an in rem . . . proceeding.  Also included within the category of suits in rem are . . . proceedings to establish and enforce claims to and liens on real or personal property."); See also In re Kressler, 40 Fed. App'x 712, 713–14 (3d Cir. 2002) (observing "the long-standing rule in bankruptcy that a lien is a property interest an in rem claim [sic] rather than an in personam claim."); Hammond v. Allegheny Cty. Treasurer (In re Hammond), 420 B.R. 633, 636 (Bankr. W.D. Pa. 2009) (Finding that "the in rem nature" of a lien stripping claim "favored use of § 506").

<u>Case administrator to mail to</u>:
Debtors
Donald R. Calaiaro, Esq.
Frances E. Corbett, Esq.
Anthony T. Kovalchick, Esq.
Ronda J. Winnecour, Esq.
Office of the United States Trustee